JDN

**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Saul Beltran-Ojeda, | No. CV 12-1287-PHX-DGC (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| John Doe, et al., | |
| Defendants. | |

Plaintiff Saul Beltran-Ojeda brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio and Dr. Richard Friedman (Doc. 10). Before the Court is Defendants' second Motion to Dismiss (Doc. 24), which Plaintiff opposes (Doc. 26). The Court will grant the motion in part and deny it in part.

**I.     Background**

In Count I of his Second Amended Complaint, Plaintiff alleged that, in violation of the Fourteenth Amendment, Arpaio was deliberately indifferent to unsafe conditions of confinement and, as a result, Plaintiff contracted hepatitis C (Doc. 10 at 3). In Count II, Plaintiff alleged that, in violation in the Fourteenth Amendment, Dr. Friedman failed to treat Plaintiff's hepatitis C symptoms (id. at 4).

Defendants move to dismiss Plaintiff's claims on the ground that he failed to properly

exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. 24).[1]

**II.    Exhaustion Legal Standard**[2]

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009).  Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).  A prisoner must complete the administrative review process in accordance with the applicable rules.  See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007).  Thus, the defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt, 315 F.3d at 1119.  There can be no absence of exhaustion unless a defendant demonstrates that applicable relief remained available in the grievance process.  Brown v. Valoff, 422 F.3d 926, 936-7 (9th Cir. 2005).  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20.  And when considering disputed issues of fact, a court has broad discretion as to the method used in resolving the dispute because "there is no right of jury trial" as to an issue arising in a pre-answer motion.  Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).  If a court finds that the plaintiff failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.  Wyatt, 315 F.3d at 1120.

---

[1]The Court issued the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. 25).

[2]In their motion, Defendants set forth the standard under Federal Rule of Civil Procedure 12(b)(6) that applies to motions to dismiss for failure to state a claim (Doc. 24 at 2-3).  That is not the standard applied to motions to dismiss for failure to exhaust remedies. See Wyatt, 315 F.3d at 1119 (failure to exhaust remedies subject to an unenumerated Rule 12(b) motion).

### III.     Medical Grievance Procedure

To demonstrate that there were remedies available, Defendants must submit adequate and complete documents of the grievance system established at the Maricopa County Sheriff's Office (MCSO) jail.  See Wyatt, 315 F.3d at 1119, 1120 & n. 5; see also Brown, 422 F.3d at 936-37.  Defendants submit the affidavit of Michelle Kraetsch, a Sergeant assigned to the MCSO Inmate Hearing Unit (Doc. 24, Ex. A, Kraetsch Aff. ¶ 1).  She avers that inmates are notified of the grievance procedures when they receive the MCSO Rules and Regulations, which is available in both English and Spanish (id. 6).  Attached to Kraetsch's affidavit are a copy of MCSO Policy DJ-3, *Inmate Grievance Procedure*, and excerpts from the MCSO *Rules and Regulations* (id., Attachs. 1-2).

Kraetsch states that under Policy DJ-3, the first step in the medical grievance procedure requires an inmate to submit a medical grievance form, which is forwarded—via the Bureau Hearing Unit—to the medical unit for the charge nurse to respond (id. ¶ 5).  If not satisfied with the response, the inmate may submit an Institutional Grievance Appeal, which is forwarded—again via the Bureau Hearing Unit—to the medical unit for a response (id.).  If not satisfied, the inmate may file an External Appeal Grievance form, which is picked up by a detention sergeant, forwarded to the Bureau Hearing Unit, and then forwarded to the medical unit (id.).  The Correctional Health Services Liaison then determines if the grievance ends or should be sent to the External Referee for a response (id.).  Any response from the External Referee is forwarded to the inmate, and the administrative remedy process is completed (id.).  At each step in the process, there are time frames in which the inmate must file each appeal and medical staff must respond (id.; Doc. 24, Ex. A, Attach. 2 (Doc. 24-1 at 23)).

### IV.     Discussion

#### A.     Plaintiff's Grievance #12-01148

Defendants state that four months after Plaintiff filed this lawsuit, he submitted a medical grievance, identified as grievance #12-11048 (Doc. 24 at 6).  According to Defendants, this is the only grievance Plaintiff exhausted prior to filing his Second Amended

1    Complaint (id.).  They argue that this grievance does not serve to exhaust remedies because
2    (1) the issue raised in the grievance is unrelated to the claims in this lawsuit and (2) the
3    grievance was not exhausted prior to Plaintiff initiating the lawsuit (id. at 6-7).  As to this
4    second ground, Defendants assert that because the claims in Plaintiff's Second Amended
5    Complaint arose before he filed his original complaint—as evidenced by the fact that he
6    raised the same claims in his original complaint—he was required to exhaust remedies prior
7    to initiating the lawsuit (id. at 7).  See Rhodes v. Robinson, 621 F.3d 1002, 1006-07 (9th Cir.
8    2010) (if new claims arise *after* the original Complaint is filed, the exhaustion requirement
9    is satisfied with respect to these new claims if they are exhausted prior to the filing of a
10   supplement, amended complaint).

11        Plaintiff filed his original Complaint on June 4, 2012 (Doc. 1 at 6) and his Second
12   Amended Complaint on November 14, 2012 (Doc. 10 at 7).  He initiated grievance #12-
13   11048 on October 15, 2012 (Doc. 24, Ex. A, Attach. 4 (Doc. 24-3 at 8)).  The grievance was
14   appealed through to the External Referee and timely responded to on November 19, 2012
15   (Doc. 24, Ex. A, Attach. 4 (Doc. 24-3 at 11)).

16        Defendants mistakenly assert that grievance #12-11048 was exhausted before the date
17   of the Second Amended Complaint (Doc. 24 at 7).  They appear to rely on the court docket
18   showing that the amended pleading was received and docketed on December 3, 2012 (Doc.
19   10).  But the filing date is the date Plaintiff signed the amended pleading—November 14,
20   2012 (id. at 7).  See Houston v. Lack, 487 U.S. 266, 273 (1988) (filing date is the date a
21   prisoner delivers his complaint to prison officials for mailing); Douglas v. Noelle, 567 F.3d
22   1103, 1108 (9th Cir. 2009) (the date prisoner delivers complaint to officials for mailing is
23   determined by the date of the prisoner's declaration).  Thus, Plaintiff filed his Second
24   Amended Complaint five days *before* receiving the External Referee's response, which does
25   not constitute proper exhaustion, regardless of when Plaintiff's claims arose.

26        **B.    Availability of Remedies**
27        The PLRA "does not require exhaustion when circumstances render administrative
28   remedies 'effectively unavailable.'"  Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010).

An administrative remedy becomes unavailable for purposes of exhaustion if prison officials' actions thwart an inmate's attempts to exhaust.  See, e.g., Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010); Brown, 422 F.3d at 943 n. 18.   Administrative remedies may also be unavailable when prison officials fail to respond to properly filed grievances or fail to abide by internal regulations governing the appeals process.  See Nunez, 591 F.3d at 1224; Brown, 422 F.3d at 937-38, 943 n. 18.  The Ninth Circuit has explained that information provided to the prisoner, such as response memoranda and regulations or directives that explain the scope of the grievance process, serves to demonstrate whether remedies remained available. Brown, 422 F.3d at 937 ("information provided the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, 'available'").

Plaintiff states that he attempted to exhaust numerous medical grievances, but MCSO staff did not comply with Policy DJ-3 in that they failed timely pick up Plaintiff's grievances. Plaintiff states that they signed-off on some grievances without informing him if there were errors or allowing him to correct deficiencies, they failed to timely respond to grievances, and they failed to inform him which documents he should use (Doc. 26 at 5-9).  He alleges that MCSO staff intentionally prevented processing of his appeals and that he did not receive any assistance from CHS or MCSO staff for his inability to speak or write English (id. at 8-11).  Plaintiff specifically alleges that he received no orientation and that, on numerous occasions, he asked for an interpreter so that he could get responses to his grievances in Spanish (id. at 10-11).[3]  According to Plaintiff, without an interpreter or staff assistance, he was forced to seek help from other inmates to write health requests and grievances and to interpret what many of the grievances said (id.).  He points out that all of his documents are clearly written by different inmates because he did not have an interpreter, and he states that it has been very difficult for him (id. at 11).  Plaintiff adds that many of his grievances submitted in Spanish were refused (id. at 12).

---

[3]Two grievances submitted by Plaintiff are written in Spanish and the response from jail officials is written in English (Doc. 26, Attach. 3 (grievance #12-07604 and #12-06240) (Doc. 26-3 at 9, 11)).

1      In their reply, Defendants do not address Plaintiff's claim that he did not receive any
2  staff assistance with grievances despite his inability to speak or write English, nor do they
3  dispute his claims that he made requests for an interpreter and that he received no orientation
4  (see Doc. 27).  As mentioned, the *Rules and Regulations* are available in Spanish, and
5  Kraetsch attests that so are the grievance forms (Doc. 24, Ex. A, Kraetsch Aff. ¶¶ 6-7).
6  Nonetheless, Policy DJ-3 specifically provides that jail staff must make a reasonable effort
7  to provide an interpreter for those inmates who do not read or communicate in English
8  (Doc. 24, Ex. A, Attach. 1 (Doc. 24-1 at 9-10)).  Thus, if Defendants failed to provide any
9  interpreter assistance to Plaintiff when requested, and at the same time refused to accept
10  some grievances in Spanish and responded to some grievances only in English, it may
11  support a finding that remedies were rendered unavailable, which would constitute an
12  exception to the exhaustion requirement.  See Nunez, 591 F.3d at 1224 (an administrative
13  remedy is not available if a prisoner, through no fault of his own, was prevented from
14  availing himself of it).

15      The record demonstrates that Plaintiff was aware of the grievance procedure at the jail
16  (Doc. 10 at 5; Doc. 26 at 6).  Therefore, to qualify for an exception to the exhaustion
17  requirement, he must show that he filed a grievance that would have sufficed to exhaust his
18  claim but that, due to jail officials' actions, he was prevent from exhausting it.  See Sapp, 623
19  F.3d at 823-24.

20      Before reviewing Plaintiff's medical grievances to determine whether any would have
21  sufficed to exhaust the claims in this lawsuit, the Court must address an issue Defendants
22  raised above with regard to grievance #12-11048.  That is, are the claims in Counts I and II
23  of the Second Amended Complaint "new" claims that arose after Plaintiff filed his original
24  complaint, in which case he needed only to exhaust prior to filing the amended pleading on
25  November 14, 2012, or did the Second Amended Complaint claims arise before the original
26  complaint was filed, in which case Plaintiff had to exhaust prior to initiating the lawsuit on
27  June 4, 2012.  See Rhodes, 621 F.3d at 1006-07.  As Defendants point out in their motion
28  (Doc. 24 at 8), Plaintiff raised the exact same claims in both his original complaint and the

Second Amended Complaint; specifically, (1) that his constitutional rights were violated when he contracted hepatitis C during his confinement as a result of unsanitary conditions of confinement (compare Doc. 1, Count I with Doc. 10, Count I), and (2) that his constitutional rights were violated when Defendant Doe—later identified as Dr. Friedman—failed to provide treatment for his hepatitis C (compare Doc. 1, Count III with Doc. 10, Count II).  Because the same claims were raised in the original complaint, they arose prior to the filing of this action, and Plaintiff was required to exhaust remedies for both claims before initiating this suit on June 4, 2012. See Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).

Among all the grievance documents submitted by the parties, only four grievances were filed before June 4, 2012 (Doc. 24, Ex. A, Attach. 4 (grievances dated 11/5/10, 3/10/12, and two dated 5/19/12) (Doc. 24-2 at 5-10)).  Only one of these four grievances relates to either one of Plaintiff's claims (id. (Doc. 24-2 at 8-10)).  This grievance, dated 5/19/12 and identified as grievance #12-04831, complains about the lack of treatment for Plaintiff's hepatitis C (id.).  The grievance does not name Dr. Friedman specifically, but the grievance form simply instructs the inmate to "briefly describe your grievance and a proposed resolution" (id.).  See Jones, 549 U.S. at 218 (level of detail required in a grievance is defined by the jail's requirements, not the PLRA).  In grievance #12-04831, Plaintiff refers to his communications with "the doctor" and complains about his untreated symptoms, his repeated requests for hepatitis C treatment, and the fact that nothing is being done (id.).  The Court finds that this grievance was sufficient to put jail officials on notice of Plaintiff's claim in Count II.  See Griffin, 557 F.3d at 1120 (an administrative remedy suffices if it alerts the prison to a problem); see also Jones, 549 U.S. at 219 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("[w]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation.")).  It follows that if this grievance was pursued through all levels of administrative

1    appeals, it would have sufficed to exhaust Plaintiff's claim in Count II.  See Sapp, 623 F.3d
2    at 823-24.

3    But this grievance does not put officials on notice of Plaintiff's claim that unlawful
4    conditions of confinement caused him to contract hepatitis C, and there were no other
5    grievances filed prior to June 4, 2012 concerning this claim.  Therefore, Count I will be
6    dismissed for failure to exhaust, and Arpaio will be dismissed as a Defendant.

7    Grievance #12-04831 is written in English, and the face of the document shows a
8    response, in English, under the section titled "Sergeant Action Taken and/or Delegated to
9    Officer 'Medical' Action Taken to Resolve" (Doc. 24, Ex. A, Attach. 4 (Doc. 24-2 at 8)).
10   The response is dated May 26, 2012 (id.).  Plaintiff states that each of his medical grievances
11   were signed by a shift sergeant and each grievance was sent to the next level (Doc. 26 at 6-7).
12   Indeed, immediately below the response on grievance #12-04831 is a box checked stating
13   that "[t]his grievance has been . . . forwarded to the next level" (Doc. 24, Ex. A, Attach. 4
14   (Doc. 24-2 at 8)).   Below that are two more sections: one is a space for the Shift
15   Commander's action and the other is a space for the Bureau Hearing Unit's Response (id.).
16   Both of these spaces on grievance #12-04831 are blank (id.).  Plaintiff notes that there were
17   no responses from the Shift Commander, yet "no one explain[ed] what was happening" or
18   told him that he was making any mistakes (Doc. 26 at 6-7).  Plaintiff argues that this
19   demonstrates jail officials were not following the grievance procedures (id.).

20   Kraetsch attests that the grievance form "contains standard language that explains the
21   sequential steps in the grievance process" (Doc. 24, Ex. A, Kraetsch Aff. ¶ 7).  At the bottom
22   of the grievance form for grievance #12-04831, there is an instruction to the inmate stating
23   "[i]f not satisfied with the Hearing Officer's resolution, submit an Inmate Institutional
24   Grievance Appeal form within 24 hours of receipt to the Jail/Division Commander through
25   the Hearing Officer" (Doc. 24, Ex. A, Attach. 4, (Doc. 24-2 at 8)).  Relying on the language
26   on the grievance form, Plaintiff submitted his medical grievance; there was a response; the
27   grievance was forwarded to the next level; and after he received the Hearing Officer's
28   response, he could file an Institutional Grievance Appeal.

But the directions on the face of the form do not match the directions for a medical grievance.  Under the *Rules and Regulations*, if a medical grievance is not resolved, the inmate may submit a Grievance Appeal Form within 24 hours to the nursing supervisor (Doc. 24, Ex. A, Attach. 2 (Doc. 24-1 at 23)).  Policy DJ-3 provides that if a medical grievance is not resolved, the charge nurse or Hearing Unit will inform the inmate of his right to appeal to the appropriate medical manager by filing an Institutional Grievance Appeal form (id., Attach 1 (Doc. 24-1 at 12)).  According to these directives, Plaintiff did not need to wait for a response from the Shift Commander and Bureau Hearing Officer to proceed to the appeal level.[4]

On this record, documentary information provided to Plaintiff included conflicting language as to when an appeal was to be filed.  Moreover, in failing to provide an interpreter or explain to Plaintiff his right to appeal by filing an Institutional Grievance Appeal form, jail officials did not abide by their own internal regulations.  In these circumstances, pursuant to Ninth Circuit precedent, administrative remedies were effectively unavailable after Plaintiff received the May 26, 2012 response to his grievance.  See Nunez, 591 F.3d at 1224, 1226; Brown, 422 F.3d at 937.  Plaintiff's failure to exhaust the grievance is therefore excused, and Defendants' request to dismiss Count II will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. 24).

(2) Defendants' Motion to Dismiss (Doc. 24) is **granted in part** and **denied in part** as follows:

(a) the Motion is **granted** as to Count I, and Count I is dismissed for failure to exhaust administrative remedies; and

---

[4]From other medical grievance documents submitted by the parties, it appears that Plaintiff figured out months later that he could proceed to the Institutional Grievance Appeal level without a response from the Shift Commander and Bureau Hearing Officer (see Doc. 24, Ex. A, Attach. 4, grievance #12-07604 (Doc. 24-3 at 9, 11) & grievance #12-11048 (Doc. 24-3 at 16-17)).

(b) the Motion is **denied** as to Count II.

(3) Arpaio is dismissed as a Defendant.

(4) The remaining claim is Count II against Dr. Friedman.

DATED this 18th day of November, 2013.

David G. Campbell
United States District Judge